UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| KEVIN HUCKABY, | : |
| | : |
| Plaintiff, | : CIVIL CASE NO. |
| v. | : 3-14-cv-01564 (JBA) |
| | : |
| DOLGENCORP, LLC and DOLLAR | : |
| GENERAL CORPORATION | : |
| | : |
| Defendants | : DECEMBER 9, 2014 |

## AMENDED COMPLAINT

### I. FIRST COUNT (GENDER IDENTITY AND EXPRESSION DISCRIMINATION)

1. The plaintiff, Kevin Huckaby ("Plaintiff") is an African American, homosexual, transgender person, who was born a male and is in the process of changing gender to a female, who, at all times relevant herein, resides in Hamden, Connecticut.

2. At all times relevant herein, Plaintiff was diagnosed with gender dysphoria and/or Gender Identity Disorder NOS, for which Plaintiff has undergone, and will continue to undergo, treatment.

3. The defendant, Dolgencorp, LLC, is a limited liability company organized under the laws of Kentucky, which does business out of multiple locations throughout the state of Connecticut, including 1926 State Street, Hamden, Connecticut. At all times relevant herein, Dolgencorp, LLC employed seventy-five (75) or more employees in the state of Connecticut. Dolgencorp, LLC does business as Dollar General Corporation and/or Dollar General.

4. Defendant, Dolgencorp, LLC is an employer within the meaning of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 et seq.

5. The defendant Dollar General Corporation is a company doing business throughout the state of Connecticut, including 1926 State Street, Hamden, Connecticut. At all times relevant herein, Dolgencorp, LLC employed seventy-five (75) or more employees in the state of Connecticut. Dollar General Corporation is a parent or affiliated entity with Dolgencorp, LLC and has a unity of interest therewith.

6. Defendant, Dollar General Corporation is an employer within the meaning of the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 et seq.

7. All conditions precedent to jurisdiction have occurred or have been complied with in the following manner:

    a. On or about July 15, 2013, Plaintiff filed a complaint with the State of Connecticut Commission on Human Rights and Opportunities ("CHRO"), alleging, without limitation, that the defendants engaged in employment discrimination and retaliation against Plaintiff on the basis of race, gender, gender identity and expression, sexual orientation, and disability / perceived disability in violation of Conn. Gen. Stat. §§ 46a-60(a)(1) et seq., 46a-60(a)(4), and 46a-58(a), as well as provisions of federal law.

    b. On June 23, 2014, the Connecticut Commission on Human Rights and Opportunities issued to Plaintiff a "Release of Jurisdiction," attached hereto as Exhibit A.

2

8. In Fall of 2012, Defendants hired Plaintiff as an assistant manager and assistant store manager trainee at Defendants' Dollar General store located at 1926 State Street, Hamden Connecticut store (store #13331).

9. Defendants knew that Plaintiff had been diagnosed with gender dysphoria and/or gender identity disorder NOS, and was undergoing treatment to change gender from male to female. Plaintiff notified Defendants of the same so as to preempt later confusion about Plaintiff's appearance and future name change.

10. Thereafter, Plaintiff began receiving numerous harassing and insulting comments about having a gender identity disorder, including comments from Defendants' assistant manager, "Gregory," that he "did not like transgender people," and that being transgender "sounds like a mental problem to me." "Gregory" was more senior than the Plaintiff. Plaintiff's manager and/or supervisors were aware of these comments and failed to take any action.

11. Although Plaintiff was equally – and at times more – qualified than similarly situated assistant store managers and assistant store manager trainees who did not have gender dysphoria and/or gender identity disorder NOS, yet were paid $12.00 per hour, Plaintiff's rate of compensation was $8.70 per hour.

12. Although Plaintiff's job responsibilities required training in specific areas, such as how to use the cash register and how to properly present store merchandise, Defendants' assistant managers intentionally frustrated and impeded those responsibilities, and assigned Plaintiff to menial tasks like checking the milk expiration dates and mopping the floor despite other lower-level employees being

3

available. The assistant managers who took these actions had more seniority than the Plaintiff and/or were not trainees.

13. Throughout the course of Plaintiff's employment, Plaintiff experienced ongoing and worsening health problems. On one occasion, Plaintiff had internal bleeding which caused visible external bleeding. Defendants' managers and employees were aware of Plaintiff's deteriorating condition and that it was due to the gender changing process.

14. On or about January 17, 2013, Plaintiff appeared at work dressed as a female.

15. On or about January 17, 2013, Defendants' district manager, Bob Bissonette, approached Plaintiff, and told Plaintiff to leave work, purportedly due to Plaintiff's illness. Mr. Bissonette assured Plaintiff that Plaintiff's absence from work would not adversely impact Plaintiff's employment with Defendants. Mr. Bissonette's assurances were false and the real reason Plaintiff was sent home was due to wearing female attire.

16. On or about January 18 and January 19, 2013, Plaintiff was hospitalized.

17. On or about January 18, 2013, Plaintiff notified the Defendants' assistant store managers, "Gregory" and "Michael," Defendants' store manager who was also out sick, Arthur Travaglini, Defendants' acting store manager, "Jose," and Defendants' district manager, Bob Bissonette, that Plaintiff was hospitalized.

4

18. Plaintiff remained out of work from approximately January 18, 2013 through January 21, 2013 due to Plaintiff's illness. Plaintiff notified Plaintiff's managers of the same.

19. Plaintiff was released to return to work full duty on January 22, 2013.

20. On January 22, 2013, when Plaintiff returned to work, Defendants' assistant store manager, "Michael," notified Plaintiff that Plaintiff's job had been terminated. "Michael" instructed Plaintiff to call Defendants' district manager, Bob Bissonette.

21. On January 22, 2013, Plaintiff called Bob Bisonette, who failed to answer or respond to Plaintiff's call.

22. On January 22, 2013, Plaintiff then called Defendants' acting store manager, "Jose," who advised Plaintiff that Plaintiff was terminated. The purported reason for the termination on January 22, 2013 was Plaintiff's purported failure to open the store on January 20, 2013.

23. Plaintiff was not fully trained to independently open the store, and, as of January 20, 2013, did not have the keys or codes to open the store.

24. Failure to open the store was a baseless pretext.

25. Defendants terminated Plaintiff's employment on January 22, 2013 without legitimate reason.

26. Defendants terminated Plaintiff due to gender identity and expression. The district manager instructed Plaintiff to leave the store on January 17, 2013 due to gender identity and expression. Immediately thereafter the district manager either

directly decided to terminate Plaintiff or concurred with termination due to Plaintiff's gender identity and expression.

27. As of January 22, 2013, Plaintiff's gender identity and gender expression did not impact Plaintiff's ability to work. Plaintiff was capable of performing all of Plaintiff's duties at Dollar General as of January 22, 2013.

28. Plaintiff was in fact discriminated against by defendant based on Plaintiff's gender identity and gender expression, thereby placing Plaintiff in the class of persons protected from said discrimination by the laws of the State of Connecticut; namely the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 et seq.

29. Said discrimination violated Plaintiff's rights under Conn. Gen. Stat. § 46a-60(a)(1)-(2).

## II.   SECOND COUNT (SEXUAL ORIENTATION DISCRIMINATION)

1 – 8  Plaintiff repeats and realleges Paragraphs 1 through 8 of the First Count of the Complaint as though the same were set forth in this Count of the Complaint.

9. Defendants knew that Plaintiff's sexual orientation was homosexual. Defendants' district manager, Bob Bissonette, was the first person Plaintiff told. In addition to Mr. Bissonette, one of Defendants' assistant managers, "Gregory," asked Plaintiff if Plaintiff was gay or liked boys. "Gregory" knew that Plaintiff was homosexual. "Gregory" had more seniority and/or was not a trainee.

10. During Plaintiff's term of employment, plaintiff received – directly and indirectly – numerous harassing and insulting comments concerning Plaintiff's sexual orientation, including, without limitation:

   a. Comments from Defendants' assistant manager, "Gregory," that he "did not like gay people."

   b. Comments from another assistant manager, "Christopher," involving sexual references to the chocolate candies in the store.

   c. Additional comments from Defendants' assistant manager, "Christopher," to Plaintiff's mother, a regular customer at Defendants' store, concerning Plaintiff's sexual orientation.

   d. Sexual comments and advances by "Christopher" towards toward Plaintiff.

11. Plaintiff rebuffed these sexually harassing comments and advances, and complained of the same to Plaintiff's supervisors, assistant store managers, store manager, and district manager. No actions were taken by Defendants to stop the harassment and/or protect the Plaintiff.

12. Although Plaintiff was equally – and at times more – qualified than similarly situated heterosexual assistant store managers and assistant store manager trainees who were paid $12.00 per hour, Plaintiff's rate of compensation was $8.70 per hour.

13. Although Plaintiff's job responsibilities required training in specific areas, such as how to use the cash register and how to properly present store merchandise, Defendants' assistant managers intentionally frustrated and impeded

those responsibilities, and assigned Plaintiff to menial tasks like checking the milk expiration dates and mopping the floor despite other lower-level employees being available. The assistant managers who took these actions had more seniority than the Plaintiff and/or were not trainees.

14. Plaintiff repeats and realleges Paragraph 14 of the First Count of the Complaint as though the same were set forth as Paragraph 14 in this Count of the Complaint.

15. On or about January 17, 2013, Defendants' district manager, Bob Bissonette, approached Plaintiff, and told Plaintiff to leave work, purportedly due to Plaintiff's illness. Mr. Bissonette assured Plaintiff that Plaintiff's absence from work would not adversely impact Plaintiff's employment with Defendants. Mr. Bissonette's assurances were false. Plaintiff was sent home was due to Plaintiff's sexual orientation.

16-25. Plaintiff repeats and realleges Paragraphs 16 through 25 of the First Count of the Complaint as though the same were set forth as Paragraphs 16 through 25 of this Count of the Complaint.

26. Defendants terminated Plaintiff due to Plaintiff's sexual orientation. The district manager instructed Plaintiff to leave the store on January 17, 2013 due to Plaintiff's sexual orientation. Immediately thereafter the district manager either directly decided to terminate Plaintiff or concurred with termination due to Plaintiff's gender identity and expression.

27.     As of January 22, 2013, Plaintiff's sexual orientation did not impact Plaintiff's ability to work. Plaintiff was capable of performing all of Plaintiff's duties at Dollar General as of January 22, 2013.

28.     Plaintiff was in fact discriminated against by defendant based on Plaintiff's sexual orientation (homosexual), thereby placing Plaintiff in the class of persons protected from said discrimination by the laws of the State of Connecticut.

29.     Said discrimination violated Plaintiff's rights under Conn. Gen. Stat. §§ 46(a)-58(a), 46a-60(a)(1)-(2).

### III.     THIRD COUNT (SEX DISCRIMINATION)

1 – 8.     Plaintiff repeats and realleges Paragraphs 1 through 8 of the First Count of the Complaint as though the same were set forth in this Count of the Complaint.

9.     Defendants knew that Plaintiff was transgender, and was undergoing treatment to change sex from male to female. Plaintiff notified Defendants of the same so as to preempt later confusion about Plaintiff's appearance and future name change. Plaintiff specifically notified Plaintiff's managers and supervisors about being transgender and in the process of changing sex from male to female.

10.     Thereafter, Plaintiff began receiving numerous harassing and insulting comments about being transgender, including comments from Defendants' assistant manager, "Gregory," that he "did not like transgender people," and that being transgender "sounds like a mental problem to me." "Gregory" had more seniority and/or was not a trainee.

9

11. Although Plaintiff was equally – and at times more – qualified than similarly situated non-transgender assistant store managers and assistant store manager trainees who were paid $12.00 per hour, Plaintiff's rate of compensation was $8.70 per hour.

12 – 25. Plaintiff repeats and realleges Paragraphs 12 through 25 of the First Count of the Complaint as though the same were set forth as Paragraphs 12 through 25 in this Count of the Complaint.

26. Defendants terminated Plaintiff due to Plaintiff's gender. The district manager instructed Plaintiff to leave the store on January 17, 2013 due to Plaintiff's sex. Immediately thereafter the district manager either directly decided to terminate Plaintiff or concurred with termination due to Plaintiff's sex.

27. As of January 22, 2013, Plaintiff's sex did not impact Plaintiff's ability to work. Plaintiff was capable of performing all of Plaintiff's duties at Dollar General as of January 22, 2013.

28. Plaintiff was in fact discriminated against by defendant based on Plaintiff's sex, thereby placing Plaintiff in the class of persons protected from said discrimination by the laws of the State of Connecticut; namely the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 et seq.

29. Said discrimination violated Plaintiff's rights under Conn. Gen. Stat. § 46a-60(a)(1)-(2).

## IV. FOURTH COUNT (RACE DISCRIMINATION)

1 – 8. Plaintiff repeats and realleges Paragraphs 1 through 8 of the First Count of the Complaint as though the same were set forth in this Count of the Complaint.

9. Defendants knew that Plaintiff was African American.

10. During Plaintiff's term of employment, plaintiff received – directly and indirectly – numerous harassing and insulting comments concerning Plaintiff's race, including, without limitation:

   a. Comments from Defendants' assistant manager, "Gregory," that African-Americans in or around Defendants' store were there to rob it.

   b. Comments from Defendants' assistant managers, "Gregory," "Christopher," and "Michael" that it seems like it's always African Americans who steal from the store.

11. Plaintiff rebuffed these racist comments, and complained of the same to Plaintiff's supervisors, assistant store managers, store manager, and district manager. No actions were taken by Defendants to stop the harassment and/or protect the Plaintiff.

12. Although Plaintiff was equally – and at times more – qualified than similarly situated non-African American assistant store managers and assistant store manager trainees who were paid $12.00 per hour, Plaintiff's rate of compensation was $8.70 per hour.

13. On January 22, 2013, Defendants terminated Plaintiff's employment. Defendants' decision to terminate Plaintiff's employment was motivated by Plaintiff being an African American.

14. Defendants' purported reason for the termination on January 22, 2013 was that Plaintiff failed to open the store on January 20, 2013. This was a baseless pretext. Defendants knew Plaintiff had been hospitalized and was out sick. Defendants were the one who instructed Plaintiff to leave work days before due to illness. Defendants knew Plaintiff was not returning to work until January 22, 2013. Defendants also were aware that Plaintiff could not open the store because Plaintiff was not fully trained and did not have keys nor codes to independently open the store.

15. As of January 22, 2013, Plaintiff's race did not impact Plaintiff's ability to work. Plaintiff was capable of performing all of Plaintiff's duties at Dollar General as of January 22, 2013.

16. Plaintiff was in fact discriminated against by Defendants based on Plaintiff's race, thereby placing Plaintiff in the class of persons protected from said discrimination by the laws of the State of Connecticut; namely the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 et seq.

17. Said discrimination violated Plaintiff's rights under Conn. Gen. Stat. § 46a-60(a)(1)-(2).

## V.	FIFTH COUNT (DISABILITY DISCRIMINATION)

1 – 25.	Plaintiff repeats and realleges Paragraphs 1 through 25 of the First Count of the Complaint as though the same were set forth in this Count of the Complaint.

26.	Defendants knew, or should have known, that Plaintiff had gender dysphoria and/or Gender Identity Disorder NOS, a recognized mental disorder, and should have made certain accommodations.

27.	Defendants knew that Plaintiff was ill and was just returning from being hospitalized for physical symptoms.

28.	Instead, Defendants took adverse action against Plaintiff, harassed Plaintiff, delegated Plaintiff to difficult tasks requiring less training than the position for which Plaintiff was hired, failed and refused to accommodate Plaintiff's mental disorder, and terminated Plaintiff for Plaintiff's disability.

29.	Defendants terminated Plaintiff due to Plaintiff's disability.  The district manager instructed Plaintiff to leave the store on January 17, 2013 due to Plaintiff's disability.  Immediately thereafter the district manager either directly decided to terminate Plaintiff or concurred with termination due to Plaintiff's disability.

30.	As of January 22, 2013, Plaintiff's disability did not impact Plaintiff's ability to work.  Plaintiff was capable of performing all of Plaintiff's duties at Dollar General as of January 22, 2013.

31.	Plaintiff was in fact discriminated against by Defendants based on Plaintiff's disability, thereby placing Plaintiff in the class of persons protected from

said discrimination by the laws of the State of Connecticut; namely the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 et seq.

32. Said discrimination violated Plaintiff's rights under Conn. Gen. Stat. § 46a-60(a)(1)-(2).

## VI.   SIXTH COUNT (PERCEIVED DISABILITY DISCRIMINATION)

1 – 25. Plaintiff repeats and realleges Paragraphs 1 through 25 of the First Count of the Complaint as though the same were set forth in this Count of the Complaint.

26. Defendants knew that Plaintiff had gender dysphoria, Gender Identity Disorder NOS or some other disorder, which Defendants perceived as a disability.

27. Defendants terminated Plaintiff due to Plaintiff's perceived disability. The district manager instructed Plaintiff to leave the store on January 17, 2013 due to Plaintiff's perceived disability. Immediately thereafter the district manager either directly decided to terminate Plaintiff or concurred with termination due to Plaintiff's perceived disability.

28. Defendants took adverse action against Plaintiff, harassed Plaintiff, delegated Plaintiff to difficult tasks requiring less training than the position for which Plaintiff was hired, and terminated Plaintiff for Plaintiff's perceived disability.

29. As of January 22, 2013, Plaintiff's perceived disability did not impact Plaintiff's ability to work. Plaintiff was capable of performing all of Plaintiff's duties at Dollar General as of January 22, 2013.

30. Plaintiff was in fact discriminated against by Defendants based on Plaintiff's perceived disability, thereby placing Plaintiff in the class of persons

protected from said discrimination by the laws of the State of Connecticut; namely the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 et seq.

31. Said discrimination violated Plaintiff's rights under Conn. Gen. Stat. § 46a-60(a)(1)-(2).

## VII. SEVENTH COUNT (SEXUAL HARASSMENT)

1 - 10. Plaintiff repeats and realleges Paragraphs 1 through 10 of the First Count of the Complaint as though the same were set forth in this Count of the Complaint.

11 - 14. Plaintiff repeats and realleges Paragraphs 9 through 12 of the Second Count of the Complaint as though the same were set forth in this Count of the Complaint.

15. Plaintiff was subjected to discriminatory sexual harassment by Defendants' assistant managers, "Gregory" and "Christopher," who made frequent and ongoing sexually explicit and demeaning comments to Plaintiff based on Plaintiff's gender, gender identification, and sexual orientation.

16. Defendants knew or should have known of the toxic, harassing aspects of the work place, and took no action to remedy the known propensity of "Gregory" and "Christopher" to engage in such illegal harassment.

17. Said conduct on the part of Defendants violated Plaintiff's rights under Conn. Gen. Stat. § 46a-60(a)(8).

## VIII. EIGHTH COUNT (RETALIATION)

1 - 8. Plaintiff repeats and realleges Paragraphs 1 through 8 of the First Count of the Complaint as though the same were set forth in this Count of the Complaint.

9. In January of 2013, the store manager, Arthur Travaglini was unable to continue working due to his own illness and disability that necessitated hospitalization. During Mr. Travaglini's absence Defendants' supervisors and managers solicited Plaintiff to write an inaccurate and untruthful statement regarding Mr. Travaglini's performance as the store manager. Defendants sought to use this statement as a "pretext" for their discriminatory termination of Mr. Travaglini. Plaintiff refused to aid Defendants by writing or signing an inaccurate statement.

10. Although Plaintiff was equally – and at times more – qualified than similarly situated assistant store managers and assistant store manager trainees who provided inaccurate and untruthful statements about the performance of Mr. Travaglini, yet were paid $12.00 per hour, Plaintiff's rate of compensation was $8.70 per hour.

12. Although Plaintiff's job responsibilities required training in specific areas, such as how to use the cash register and how to properly present store merchandise, Defendants' assistant managers and interim store manager intentionally frustrated and impeded those responsibilities, and assigned Plaintiff to menial tasks like checking the milk expiration dates and mopping the floor despite other lower-level employees being available. The assistant managers who took these actions had more seniority than the Plaintiff and/or were not trainees. These

16

actions were taken because Plaintiff refused to cooperate by providing an inaccurate and untruthful statement against Mr. Travaglini.

13. Defendants terminated Plaintiff's employment on January 22, 2013 without legitimate reason.

14. Defendants terminated Plaintiff due to his refusal to write or sign an inaccurate or untruthful statement regarding the performance of Mr. Travaglini.

15. Defendants made the decision to terminate Plaintiff at the first opportunity following Plaintiff's refusal to write or sign an inaccurate or untruthful statement regarding the performance of Mr. Travaglini.

16. As of January 22, 2013, Plaintiff was capable of performing all of Plaintiff's duties at Dollar General.

17. As a result of said acts of retaliation, Plaintiff has suffered and continues to suffer emotional, physical, psychological, and reputational harm.

18. Defendants' acts of discrimination and retaliation were performed with malice and reckless indifference to Plaintiff's protected civil rights and were the direct and continuing result of a pattern of illegal conduct.

19. Said conduct on the part of Defendants violated Plaintiff's rights under Conn. Gen. Stat. § 46a-60(a).

WHEREFORE, Plaintiff respectfully requests that this court:

i. Declare the conduct engaged in by Defendants to be in violation of Plaintiff's rights;

ii. Enjoin Defendants from engaging in such conduct;

iii. Award Plaintiff equitable relief of reinstatement to Plaintiff's position with back salary and fringe benefits up to the date of judgment, together with prejudgment interest for that entire period as well as front salary and benefits accrual;

iv. Award Plaintiff compensatory and punitive damages;

v. Award Plaintiff costs and attorney's fees; and

vi. Grant such other and further relief as the Court may deem just and proper.

THE PLAINTIFF
KEVIN HUCKABY

By: _____
Jeremy C. Virgil

Zeldes, Needle & Cooper, P.C.
1000 Lafayette Blvd., Suite 500
Bridgeport, CT 06604
Tel: 203-333-9441
Fax: 203-333-1489
Email: jvirgil@znclaw.com

His Attorneys

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| KEVIN HUCKABY, | : | |
| | : | |
| Plaintiff, | : | CIVIL CASE NO. |
| v. | : | 3-14-cv-01564  (JBA) |
| | : | |
| DOLGENCORP, LLC and DOLLAR GENERAL CORPORATION | : | |
| | : | |
| Defendants | : | DECEMBER 9, 2014 |

## STATEMENT OF AMOUNT IN DEMAND

The amount in demand, exclusive of interest and costs, is greater than Fifteen Thousand ($15,000.00) Dollars.

                              THE PLAINTIFF
                              KEVIN HUCKABY

                              By: _____
                                  Jeremy C. Virgil

                                  Zeldes, Needle & Cooper, P.C.
                                  1000 Lafayette Blvd., Suite 500
                                  Bridgeport, CT 06604
                                  Tel: 203-333-9441
                                  Fax: 203-333-1489
                                  Email: jvirgil@znclaw.com

                              His Attorneys

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2014, a copy of foregoing was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

                                                Jeremy C. Virgil